UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CALVIN EPPS, )
 )
    Petitioner, ) Civil No. 0:20-CV-44-HRW
 )
v. )
 )
H. ALLEN BEARD, JR., Warden, ) **MEMORANDUM OPINION**
 ) **AND ORDER**
    Respondent. )

*** *** *** ***

Federal inmate Calvin Epps has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 to challenge disciplinary sanctions against him.[1] Specifically, Epps requests expungement of the disciplinary conviction because the Bureau of Prisons ("BOP") took ten months to deliver the Disciplinary Hearing Officer ("DHO")'s Report to him, delaying his ability to appeal it. [D. E. No. 1 at 5, 8; D. E. No. 12 at 1] The Warden concedes the delay but contends that Epps was not prejudiced by it. He further asserts that Epps failed to exhaust his administrative

---

[1] The Court previously ordered that Epps's second petition [D. E. No. 9] would be disregarded as duplicative of the first, but that it would consider Epps's subsequently filed motion [D. E. No. 12] when resolving his petition. *See* [D. E. No. 13] Six months after briefing closed, Epps filed additional documents into the record. *See* [D. E. No. 19] Because he proceeds *pro se*, the Court considers these documents as well.

1

remedies once he received the DHO Report. [D. E. No. 17] Epps has filed his reply [D. E. No. 18], and the matter is ripe for decision.

The Court harbors concern about the extensive delay in this case, and under different circumstances would not hesitate to find a violation of an inmate's due process rights. But at least with respect to the loss of good conduct time, the kind of sanction redressable in this habeas corpus proceeding, the Court agrees that Epps suffered no prejudice as a result of the delay. It is further plain that Epps did not exhaust his administrative remedies. Finally, Epps's post-briefing grievances about the procedures used during his disciplinary proceedings were not exhausted prior to filing his petition and, in any event, are substantively meritless. For these reasons, the Court will deny the petition.

**I**

On May 31, 2019, a prison guard found Epps in possession of a cell phone, earpiece, and charger. Epps was charged with Prohibited Act Code 108, *Possession of a Hazardous Tool; Possession of a Portable Cell Phone Device*. The original Incident Report was delivered to Epps on the same day. [D. E. No. 18-1 at 4] The Incident Report was rewritten and delivered again to Epps on June 20, 2019. Epps declined to give a statement or request witnesses at the upcoming hearing before the Unit Disciplinary Committee ("UDC"). The UDC held a hearing on July 17, 2019,

and referred the charges to the Disciplinary Hearing Officer. [D. E. No. 17-3 at 20-22]

The DHO held a hearing on the charges seven days later. Epps was represented by a staff member at the hearing, but did not call any witness or present any evidence. Rather, Epps stated "I won't deny what happened, I am guilty." Based upon the charging officer's statements in the Incident Report and Epps's admission that he committed the offense, the DHO found Epps guilty of the charge. The DHO imposed various sanctions, including 30 days disciplinary segregation, 180 days loss of phone privileges, and the disallowance of 41 days of good conduct time. [D. E. No. 17-3 at 23-25]

In early September 2019, Epps filed an informal resolution attempt at the prison complaining that he had not yet received the DHO Report. The BOP's response stated that Epps would still have 20 days after the DHO Report was delivered to appeal the sanction. [D. E. No. 1-1 at 1] Epps did not file a formal grievance with the warden complaining about the delay. Instead, on November 7, 2019, Epps filed an administrative remedy with the Mid-Atlantic Regional Office ("MARO") complaining that he still hadn't received his "DHO final disposition package" four months after the hearing. [D. E. No. 1-1 at 3] Two weeks later MARO rejected the appeal, noting that "You did not provide a copy of the DHO

Report you wish to appeal or identify the charges and date of the DHO action." [D. E. No. 1-1 at 2]

The rejection was proper, but for a different reason than the one MARO provided. Epps's grievance complained that he hadn't received the DHO Report, not that he wished to appeal the disciplinary sanction. MARO therefore failed to properly understand the nature of Epps's grievance. Nonetheless, because Epps was complaining about the failure to provide him with DHO Report, he should have filed his grievance with the warden, not the regional office. 28 C.F.R. § 542.14(c)(4), (d)(2). MARO therefore properly rejected his grievance because Epps filed it at the wrong level.

Epps responded to MARO's rejection by filing a second regional appeal one week later on November 28, 2019. Epps stated that:

> The Administrative Remedy Appeal form (BP-10) that was rejected is not a DHO Appeal. It's a sensitive complaint[2] on behalf of me attempting to obtain my DHO report from the DHO Secretary Ms. Anspach and DHO Ms. Callis to properly submit an effective appeal before all of my sanctions are completed.

---

[2]  Epps's *post hoc* assertion that his initial Regional Administrative Remedy Appeal was a "sensitive" one is plainly incorrect. As a factual matter, Epps himself noted that he had raised the issue in an informal grievance with his Unit Team at the prison, rebutting any notion that he considered it to be a sensitive issue. As a procedural matter, Epps did not mark his appeal form as "Sensitive" as required by BOP regulations, or otherwise indicate in any way that he wished it to be treated as a sensitive issue. *See* 28 C.F.R. § 542.14(d)(1) ("The inmate shall clearly mark 'Sensitive' upon the Request and explain, in writing, the reason for not submitting the Request at the institution.").

4

[D. E. No. 1-1 at 5 (cleaned up)]  Notwithstanding the clarification, on December 30, 2019, MARO again mischaracterized the regional grievance as an appeal of the disciplinary sanctions and rejected the appeal, albeit for the wrong reason.  *Id*. at 4.

Nearly three months later, Epps filed an Administrative Remedy Appeal with the Central Office.  Epps again complained that he had still not received the DHO Report and stated that "all of my sanctions are over."  This time, for relief Epps requested that the disciplinary conviction be expunged.  [D. E. No. 1-1 at 7]  The Central Office rejected the appeal on March 27, 2020, correctly noting that Epps's challenge to the disciplinary conviction had been filed at the wrong level.  *Id*. at 6.  Epps filed his habeas petition in this Court shortly thereafter.

The DHO Report was finally issued on March 6, 2020, nearly eight months after the DHO hearing.  It took three more months before the DHO Report was delivered to Epps on June 2, 2020.  [D. E. No. 17-3 at 23-25]  To explain the extensive delays, the Warden includes the declaration of Michael Facey, a BOP administrator who oversees disciplinary hearings in the Mid-Atlantic Region. Facey indicates that preparation of the DHO Report was delayed in this case because the prison employed only one DHO at the time, and she had to process more than 1400 disciplinary matters between July 24, 2019 and March 6, 2020.[3]  Facey also states

---

[3]     This certainly explains the delay in processing, but it begs the question why the BOP did not employ more staff to handle such a large caseload.

that delivery of the DHO Report was delayed because Epps had been transferred to a different institution. In addition, during that period in early 2020 the COVID-19 pandemic was placing extra demands on prison officials and guards, including disciplinary staff who had to perform additional corrections duties. [D. E. No. 17-3 (Facey Decl.) at 5-6]

On June 11, 2020 – two months after he filed his petition in this Court – Epps filed a Regional Administrative Remedy Appeal with MARO challenging his disciplinary conviction. Epps complained that the issuance and processing of the disciplinary charges did not strictly comply with the procedures set forth in BOP policy documents in several respects. Epps requested that his disciplinary conviction be expunged. [D. E. No. 19-1 at 8-9]

MARO denied the appeal in August 2020. It noted that BOP policies provide that the inmate will "ordinarily" receive the Incident Report within 24 hours after the incident. It further rejected Epps's contentions that the Incident Report had been altered, had not been signed, and was not promptly entered into BOP computers. [D. E. No. 19-1 at 5-6] Epps appealed, repeating his earlier contentions. *Id*. at 3-4. The Central Office denied that appeal on February 11, 2021. [D. E. No. 19-1 at 1]

## II

The Court will first deny the petition because it is apparent that Epps did not properly exhaust his administrative remedies. Before a federal prisoner may seek

habeas relief under Section 2241, he must exhaust his administrative remedies with the BOP. *Fazzini v. Northeast Ohio Correctional Center*, 473 F. 3d 229, 231 (6th Cir. 2006); *Leslie v. United States*, 89 F. App'x 960, 961 (6th Cir. 2004) ("[I]t is well established that federal prisoners are required to exhaust their administrative remedies before filing a habeas corpus petition under § 2241.").

A federal prisoner seeking relief regarding prison conditions must first file an informal grievance, as well as a formal grievance with the warden. 28 C.F.R. §§ 542.13(a), 542.14(a). If still unsatisfied, the inmate must appeal to the appropriate regional office, and if necessary, to the Central Office. 28 C.F.R. § 542.15(a). Appeals challenging disciplinary sanctions are slightly different, with the inmate filing his initial appeal with the regional office. 28 C.F.R. § 542.14(d)(2).

As noted above, the two grievances that Epps filed with MARO in November 2019 were properly rejected because they did not challenge disciplinary sanctions but rather the delay in providing the DHO Report to Epps. They therefore should have been filed at the institutional level. *See* 28 C.F.R. § 542.14(c)(4). The third grievance that Epps filed with the Central Office in March 2020 was also properly rejected; because it challenged the disciplinary sanctions against him, it should have been filed with MARO. *See* 28 C.F.R. § 542.14(d)(2). And Epps disregarded repeated invitations to cure the defects noted by MARO and the Central Office. Therefore the only issue raised in Epps's habeas petition, the delay in receiving the

DHO Report as a basis to invalidate his disciplinary conviction, was not properly and fully exhausted.

Two months after Epps filed his petition, he received the DHO Report on June 2, 2020. Epps then appealed his disciplinary conviction to MARO, asserting noncompliance with a handful of internal BOP procedures governing the disciplinary process. [D. E. No. 19-1 at 8-9] MARO denied the appeal, as did the Central Office upon further review. [D. E. No. 19-1 at 1, 5-6] However, those matters are not properly before the Court. The various grounds for relief asserted by Epps in his administrative appeals to the BOP are entirely different than the sole ground he asserted in his petition to this Court. Epps may not challenge his disciplinary conviction on entirely different grounds than those presented to and considered by the BOP. *Pruitt v. Holland*, No. 10-CV-111-HRW, 2011 WL 13653, at *4-6 (E.D. Ky. Jan. 4, 2011). And an inmate must exhaust his administrative remedies entirely before he files suit; he may not begin or complete the exhaustion after his petition has been filed. *Cf. Freeman v. Francis*, 196 F. 3d 641, 645 (6th Cir. 1999) ("The plain language of the statute makes exhaustion a precondition to filing an action in federal court. ... The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit.") (citations omitted).

Apart from the matter of exhaustion, Epps's petition will also be denied because the materials filed by the parties establish that he was afforded all of the process to which he was due. When a prisoner believes that he was deprived of sentence credits for good conduct without due process of law, he may invoke this Court's habeas corpus jurisdiction under 28 U.S.C. § 2241. *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973). Before such credits are taken, due process requires that the inmate be given:

    (1)    written notice of the charges against him at least 24 hours before the administrative hearing on the charges;

    (2)    a hearing before an impartial decision-maker;

    (3)    assistance from a competent inmate or staff member, if the inmate requests one and he will likely be unable to present a defense because he is illiterate or the case is too complex for him to comprehend;

    (4)    the opportunity to call witnesses and present documentary evidence, if doing so would not jeopardize institutional safety or correctional goals; and

    (5)    a written statement by the hearing officer explaining the evidence relied upon and the basis for the decision.

*Wolff v. McDonnell*, 418 U.S. 539, 564-70 (1974). Due process also requires the prison disciplinary board's decision to be supported by "some evidence" in the record. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). The Bureau of Prisons has included these and even broader protections by

9

regulation. *See* 28 C.F.R. §§ 541.5 - 541.8; BOP Program Statement 5270.09 (Nov. 2020).

Epps's original grievance, which complained of the delay in receiving the DHO Report, implicates only the last *Wolff* protection. As the Warden correctly notes, however, delay in receiving the DHO report does not violate due process unless accompanied by actual prejudice to the inmate's ability to prosecute his appeal of the disciplinary conviction. *Cf. Staples v. Chester*, 370 F. App'x 925, 930 (10th Cir. 2010) (notwithstanding eight-month delay in delivering DHO report, "the DHO's failure to give an inmate a written copy of its decision within ten days should not entitle an inmate to habeas relief so long as the delay had no prejudicial effect on an administrative appeal."); *Friedman v. Hemingway*, No. 21-10185, 2022 WL 1410696, at *5 (E.D. Mich. May 4, 2022) (same); *Corley v. Hogsten*, No. 0:11-CV-97-HRW, 2011 WL 3809939, at *3 (E.D. Ky. Aug. 25, 2011) ("There is no due process requirement that the written statement be provided to an inmate within a particular time.").

Here, while Epps complained of delay in filing his appeal, he did not allege any prejudice to his ability to prosecute it. Indeed, once the DHO Report was received Epps promptly filed and prosecuted his appeal to its conclusion before the

10

Central Office.[4]  Under such circumstances, Epps's due process rights were not violated.  *See Deroo v. Holinka,* 373 F. App'x 617, 618-19 (7th Cir. 2010); *Cook v. Warden, Fort Dix*, 241 F. App'x 828, 829 (3rd Cir. 2007); *Gormsen v. Snyder-Norris*, No. 15-CV-85-HRW, 2016 WL 1271026, at *6 (E.D. Ky. Mar. 29, 2016).

The grounds raised by Epps in his June 2020 administrative appeal from his disciplinary conviction are likewise without merit.  Epps contended that the reporting officer did not enter the Incident Report into the BOP's Sentry computer system within 24 hours after the incident; that the rewritten Incident Report contained a different description of the incident than the original, different and incorrect times for the incident, and was not signed; that the UDC did not conduct an initial review within five days after the incident; and that the DHO Report was not timely delivered to him.  [D. E. No. 19-1 at 8-9]

MARO accurately rebutted the factual and/or legal premises for these claims. *See* [D. E. No. 19-1 at 5-6] The rewritten Incident Report was entered into the BOP's computer system and it was signed electronically.  And nothing in Program Statement 5270.09 requires the Incident Report to be entered into the Sentry system within 24 hours.  The rewritten Incident Report did contain additional facts, namely

---

[4]   Notably, none of the grounds raised in Epps's administrative appeal relied upon the DHO Report, its findings or conclusions.  Instead, his claims were based upon asserted shortcomings in the processing of the Incident Report before the UDC hearing.

11

that the reporting officer saw a flashing light from Epps's cell before he approached the cell and saw Epps holding a cell phone. *See* [D. E. No 18-1 at 4] But nothing in Program Statement 5270.09 states or suggests that such an amendment is improper. Epps's assertion that the rewritten Incident Report identified a different time for the incident from the original is simply incorrect: both reports indicated that Epps was caught with the phone at 12:35 a.m. The only difference is that the original report used standard time, whereas the rewritten report used military time. *See* [D. E. No. 18-1 at 4; No. 17-3 at 20]

It is true that the UDC conducted its review well after the typical five-day period contemplated by Program Statement 5270.09 and the governing regulation. *See* 28 C.F.R. § 541.7(c) ("The UDC will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays. UDC."). And Epps was not given the DHO Report until long after the normal 15-day period following the conclusion of the hearing. *See* Program Statement 5270.09 ("The DHO gives the inmate a written copy of the decisions and disposition, ordinarily within 15 work days of the decision."). Unlike the Program Statement, the pertinent BOP regulation contains no presumptive time frame for delivery. *See* 28 C.F.R. § 541.8(h) ("You will receive a written copy of the DHO's decision following the hearing.").

But both provisions indicate that these time frames will "ordinarily" be met, not that they must be met in all instances. Through its inclusion of the qualifying term "ordinarily," the rule "intrinsically contemplates the possibility that prison staff might need additional time to provide an inmate a report copy," and merely delivering a report after the customary time frame does not violate the applicable regulation or Program Statement. *See Craig v. Kizziah*, No. 6:19-CV-141-REW, 2019 WL 7285556, at *4 (E.D. Ky. Dec. 27, 2019), *aff'd sub nom. Craig v. Matevousian*, No. 20-5155, 2020 WL 4516009 (6th Cir. July 17, 2020); *Adams v. Warden, United States Penitentiary at Big Sandy*, No. 7:20-CV-05-WOB, 2020 WL 7233348, at *2 (E.D. Ky. Dec. 8, 2020) ("By its terms, the regulation contemplates that under certain circumstances notice may be delayed, and hence it does not create an inflexible rule demanding compliance within a strict timeframe.").

In any event, even if the BOP had failed to adhere to its own procedures when processing Epps's Incident Report, such a violation would not provide a basis for habeas relief. An agency's failure to strictly comply with its own policies does not violate due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *United States v. Rutherford*, 555 F. 3d 190, 192 (6th Cir. 2009) ("[T]he Constitution does not demand a bright-line rule whereby every breach of federal administrative policy also violates the Due Process Clause."). Federal courts have therefore consistently denied habeas relief based upon an asserted nonconformity with the

13

procedures set forth in Program Statement 5270.09. *See Craig*, 2019 WL 7285556, at *5 (holding that the "BOP's failure to strictly track its regulations provides no basis for habeas relief.") (citing *Sandin v. Conner*, 515 U.S. 472, 481 (1995) (noting that BOP regulations are "primarily designed to guide correctional officials in the administration of a prison," not to "confer rights on inmates.") and *Julick v. Snyder-Norris*, No. 16-6652, 2017 WL 5485453, at *2 (6th Cir. Mar. 1, 2017)).

### III

For the foregoing reasons, Epps has failed to establish grounds warranting habeas relief.

Accordingly, it is hereby **ORDERED** as follows:

1.  Calvin Epps's petition for a writ of habeas corpus [D. E. No. 1] is **DENIED**.

2.  The Court will enter judgment contemporaneously with this Order.

3.  This matter is **STRICKEN** from the docket.

This the 9th day of May, 2022.



**Signed By:**
*Henry R Wilhoit Jr.*
**United States District Judge**